IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(At Greenbelt)

IN RE:                                    *
                                          *
Bruce L. Pitt                             *   Case No. 16-10659-WIL
                                          *   Chapter 11
          Debtor                          *
                                          *

*     *     *     *     *     *     *     *     *     *     *     *     *

**DISCLOSURE STATEMENT**

I.      **INTRODUCTION**.

Bruce L. Pitt, debtor and debtor-in-possession ("debtor"), provides this Disclosure Statement (hereinafter "Statement") to all of his known creditors in order to disclose that information deemed by the debtor to be material, important, and necessary for his creditors to arrive at a reasonably informed decision in exercising their right to vote for acceptance of the debtor's proposed Plan of Reorganization dated on September 29, 2016 (hereinafter, the "Plan") presently on file with the United States Bankruptcy Court.

After approval of this Statement by the United States Bankruptcy Court, the Plan will be submitted to the creditors, and the creditors will have the opportunity to vote for the acceptance or rejection of the Plan. The Statement and Plan will be transmitted to creditors along with a Ballot (attached hereto as Exhibit A). The Ballot should be completed by you and returned to the attorney for the debtor at his address stated at the end of this Statement, who will in turn file it with the United States Bankruptcy Court. The Bankruptcy Court will fix a date for the approval of the Plan, referred to as the confirmation hearing. As a creditor, your acceptance is important. In order for the Plan to be deemed accepted, it must be accepted by creditors that hold at least two-thirds in dollar amount of claims and more than one-half in number of the allowed claims in each Class that actually vote for or against the Plan.

NO REPRESENTATIONS CONCERNING THE DEBTOR (PARTICULARLY AS TO HIS FUTURE INCOME AND EXPENSES AND THE VALUE OF ANY PROPERTY) ARE AUTHORIZED BY THE DEBTOR OTHER THAN AS SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN AS CONTAINED IN THIS STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATION AND INDUCEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE DEEMED APPROPRIATE. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECTED TO A CERTIFIED AUDIT. FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE COMPLEXITY OF THE DEBTOR'S FINANCIAL MATTERS, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.

## II.   HISTORICAL BACKGROUND.

### Personal and Business History.

Bruce L. Pitt was born in Ogden, Utah in 1947.  He was raised in Layton, Utah, and attended Davis High School, where he was selected in his junior year as an all-state participant in the Legislative Forum competition, the first time in the 50-year history of his school that a junior had been selected.  He was recognized for academic achievement as a National Merit Scholarship Semifinalist and achieved a 99th percentile score on his ACT college entrance tests.  He attended the University of Utah and Weber State University, majoring in philosophy and political science.  Later, he attended Harvard University as a Senior Executive Fellow.

In 1968, while a college student, he began working for the Internal Revenue Service in Ogden, Utah.  He was employed in a part-time night shift position to fit his college class schedule.  He was recognized as an outstanding employee, and his career advanced into the information technology field, first as a Programmer, then a Resident Programmer Analyst and an Operating Systems Engineer.  He was a major contributor to the development of IT systems used by the IRS to this day, and was the originator of a key compliance system used to analyze and match information documents to tax returns, also in use today.  His contributions to IRS operations were recognized by the President of the United States in a personal Letter of Commendation.

He began his IRS managerial career in 1976, progressing through many positions of increasing responsibility, culminating in his selection for the IRS Executive Development Program in 1985.  He served with distinction as an executive and was selected for the Senior Executive Service in 1987.  As a Senior Executive, he led major IRS programs and organizations across the U.S.  In the final government position he held before optionally retiring in 1995 to found his own company, Vinculum Solutions, Inc. ("VSI"), he managed the nationwide systems development staff of the IRS, more than 3200 technical personnel.  Mr. Pitt relocated many times during his career, serving in positions in Ogden, Utah; Washington, DC; Fresno, California; Cincinnati, Ohio; and Kansas City, Missouri.  While serving as an executive in Fresno, CA, a large data center organization with 7500 employees, he led a quality improvement initiative that won a Quality Prototype Award for the Center, and made them one of two civilian agency finalists for the President's Quality Award.

As a small business, VSI grew steadily under his leadership, reaching annual revenues of over $8 million per year.  VSI has been a successful private sector contractor for more than 20 years, holding multiple government and commercial contracts.  VSI provides tax administration, tax systems, and financial analytics expertise to government and commercial clients, including IRS, several State tax agencies, and the Canada Revenue Agency.  VSI is a SAS Consulting Partner and in that capacity develops advanced analytic applications to detect financial fraud and regulatory noncompliance.  SAS is the world leader in developing statistical analytics software.  Often VSI's subject matter expertise is provided separately; for example, VSI has a networking/telecommunications architect working with the IRS on the design and implementation of its new telecommunications system which includes voice, data, video, virtual networks, etc., and that does not involve development of analytic applications.  Mr. Pitt also established a second corporation, Tax Systems Solutions, Inc. ("TSS") with the

primary intention of reselling software applications such as the applications developed by VSI.

While working in Kansas City, he met and later married Debra Beymer, his wife and partner of 31 years, in Jacksonville, Florida. They have six children in their family, five boys and a girl, between 12 and 30 years of age. When their last child was born in 2003, they were living in Spotsylvania, Virginia, where they had resided since 1990. They had outgrown their house, so began evaluating options to give them more space. As it was not feasible to expand their Spotsylvania residence sufficiently, they decided build a new home in Broomes Island, Maryland, closer to Mr. Pitt's work. They had saved cash to purchase two adjoining lots in 2004, and hired a respected local architect to design their house. Construction began in early 2005, with completion planned for late that year.

Unfortunately, the home construction was delayed due to a major error by the architect, necessitating legal action, and extending the construction phase by nearly a year, and increasing construction loan payments. The home was not completed until December 2006, just as the real estate market collapsed. The Pitt family was then saddled with two homes. They could not sell their Spotsylvania, VA property, even though it sat on the market empty for more than two years. Eventually, in 2009, they rented the Virginia property, but the cash flow remains negative.

During this same period, IRS budgets were reduced significantly by Congress, due primarily to the political conflicts much publicized in the media, and opportunities for VSI, whose primary customer is IRS, shrank dramatically. Historically, IRS budgets have been very stable, owing to the nature of their mission and the need to generate revenue to fund government operations, so the reductions were a wholly unanticipated turn of events for the entire vendor community. Multiple projects VSI, and other contractors, worked on were canceled, and contracts ended. This reduced the Pitt family income substantially. Company income is presently less than 10% of what it was five years ago. At present, Mr. Pitt does not receive any salary from the company. VSI invested a substantial amount to prepare a TIPSS 4 MBOSS proposal, which did secure the company a prime contract with IRS, but there has been very little work completed through it, due to the severe budget reductions.

The Pitt family hung on as long as they could, while their savings were becoming diminished, and Mr. Pitt worked to build the business of his company by diversifying into State tax agency markets. He also began the process of attempting to obtain loan modifications for the properties. This process drug on for a protracted time, particularly with Wells Fargo, who owned the mortgage on the MD home. Eventually, it was disclosed that Wells Fargo had packaged and sold the Pitt residence loan to a Real Estate Investment Trust ("REIT") they administered, as was a common speculative investment practice before the collapse, but the highly restrictive provisions of the Trust made Wells Fargo unwilling to modify the loan to address the issues they faced. The housing market collapse had reduced the value of their two homes by more than 50%, making refinancing impossible. At the present time, the family has loan modifications in process for the two loans on the VA rental house, and have proposed in the Chapter 11 agenda and in the Plan that these two loans be modified. Bankruptcy law does

not allow the debtor to propose modification to the Wells Fargo loan, as it is the primary residence.  However, the debtor is pursuing voluntary loan modification with Wells Fargo.

The third factor impacting Mr. Pitt's finances was that his mother-in-law was diagnosed with Huntington's disease.  A fatal, degenerative genetic disorder, it forced her to move in with their already large family as she could no longer take care of herself.  Expenses for her care further damaged their financial condition.  She lived in the Pitt home for more than three years until she was eventually placed in a nearby nursing home where she could receive the 24-hour-a-day care her deteriorating condition now requires.

Mr. Pitt has always been very conservative in managing family finances, even though he has been raising six children, one of which suffers from Autism Spectrum Disorder.  They have not taken a vacation in over 10 years.  Mr. Pitt has focused on supporting their family while securing new business for his company, in order to restore his income from it, while also working to secure additional employment.  During these years, as part of an overall plan to reduce their monthly expenses, he paid off all the credit card debt that had accumulated during the delayed construction of their home, although during the period before he was forced to file for Chapter 11 reorganization, the balance on one credit card had returned and it is now included in the Chapter 11 case.


The cumulative loss of income and increase in expenses experienced by Mr. Pitt has resulted in defaults in the payment of secured obligations, which, in turn, led to the foreclosure sale scheduled immediately prior to the commencement of this Chapter 11 case on January 20, 2016.  Mr. Pitt steadfastly pursued new sources of income during the pendency of the Chapter 11 case. He received a conditional offer of employment from the U.S. Department of the Treasury which became final following the completion of a security investigation and he began his position on July 25, 2016, on which income his Plan is premised.   Mr. Pitt also continues to operate both of his incorporated businesses, Vinculum Solutions, Inc., and Tax Systems Solutions, Inc.  From these two businesses, Mr. Pitt can derive additional future revenue.  Based on these various sources, Mr. Pitt has formulated a repayment plan to all of his creditors.

### III.  **PLAN OF REORGANIZATION**.

Provisions of Plan:  The debtor's Plan of Reorganization divides his creditors into eleven (11) Classes.

Class 1 consists of the Administrative Claim of the Office of the United States Trustee for quarterly fees required to be paid pursuant to 28 U.S.C. § 1930(a)(6) both pre-confirmation and post-confirmation of this Plan until the Case is closed by the entry of a Final Decree or dismissed, and the debtor's plan provides that the date of entry of a Final Decree will relate back to the date of filing of a request for entry of same so that in the event that an Order closing the Case is entered in a later calendar year quarter the quarterly fees which the debtor might otherwise be obligated to pay will terminate with the quarter during which the request for Final Decree is filed in  order to maximize the debtor's assets available for

distribution to creditors.  The debtor believes that this Class is not impaired pursuant to 11 U.S.C. §.1124(1).

Class 2 consists of holders of Allowed Administrative Claims incurred in the administration of the Case for the fees and expenses of Professional Persons as allowed by the Court, including the costs and attorneys' fees incurred in the preparation and resolution of the Plan and this Statement.  These allowed claims shall be paid in full on the later of (a) the Effective Date of the Plan (as defined in the Plan), (b) the date when payment next becomes due in the ordinary course of business, (c) the date upon which the claim becomes an Allowed Claim (as defined in the Plan), or (d) at such other time as may be agreed upon.  The Plan does not impair these claims.  The Plan provides that claims in this class for costs and expenses in or in connection with the Case, or in connection with the Plan and incident to the Case are subject to the approval of the Court as reasonable.  The debtor's undersigned counsel, Marc R. Kivitz, pursuant to Order Authorizing Employment of Counsel entered February 12, 2016 (Docket No. 27) estimates that upon confirmation of the Plan that his administrative claim for professional services rendered in this case will be approximately $30,000.00 after the credit of the initial retainer received.  Notice to creditors as issued on September 12, 2016, seeking approval of a voluntarily-reduced amount of compensation and reimbursement of expenses for services through August 26, 2016, totaling $19,558.92, and further Notice will be issued on any additional application for compensation and reimbursement of expenses.  The debtor estimates the Allowed Claims in Class 2 to be $30,000.00 for the completion of this Case, however, this figure could vary.  Allowed Claims in Class 2 are not claims for voting purposes.  The debtor believes that this Class is not impaired pursuant to 11 U.S.C. §.1124(1).

Class 3 consists of all Allowed Claims for pre-petition security deposits tendered to Mr. Pitt as landlord by any tenant in connection with the tenant's lease or rental of property to the extent entitled to priority under § 507(a)(7) of the Bankruptcy Code.  The Plan shall provide that Mr. Pitt shall be entitled to retain possession of the security deposits and the holders of the claims for these priority debts shall be entitled to receive the return of their security deposits at the end of their respective leases, less any expenses incurred by Mr. Pitt for other than ordinary wear and tear to the rental unit in question.  Mr. Pitt listed as creditors those persons who were tenants in real property which he owns at the time of the commencement of the Chapter 11 case who had tendered to him security deposits under the terms of a lease of the particular real property that they occupy:

| | | |
|---|---|---|
| Levi Williamson | 13301 Fox Chase Lane | $2,000.00 |
| Keyinashin Williamson | Spottsylvania, VA 22553 | Security Deposit |

Class 4 consists of pre-petition claims to the extent entitled to priority under § 507(a)(8) of the Bankruptcy Code.  The debtor did not listed any unsecured claims entitled to priority on Schedule E/F, however, prior to the July 18, 2016, Claims Bar Date for governmental units, the following proofs of claim were filed disclosing obligations that would be entitled to priority under this subsection of § 507(a):

Internal Revenue Service       $1,358.00       POC 1 filed February 8, 2016

Subsequently, on August 2, 2016, an Amended Proof of Claim was filed showing $0.00 liability as the previously claimed sum was paid by offset against Mr. Pitt and his non-filing spouse's 2015 Form 1040 Federal Income Tax Return Refund.  If any other Priority Tax is due, then the holders of Allowed Class 4 Priority Claims and Allowed Tax Claims shall receive a quarterly distribution from the Unsecured Creditors Distribution Fund in *pro rata* payment of such Class 4 Allowed Claims which Allowed Class 4 Priority Claim and Allowed Tax Claim shall continue to accrue interest at the rate determined pursuant to 26 U.S.C. § 6621 and shall be the rate prevailing in the calendar month during which a Confirmation Order with respect to this Plan is entered by the Court and shall remain at that rate throughout this Plan and will be paid within five (5) years from the date of the order for relief which commenced the Bankruptcy Case.    Allowed Claims in Class 4 are being accorded the treatment required by 11 U.S.C. §§ 1129(a)(9)(C)(i), (ii), and (iii) and as such are not claims for voting purposes.

The debtor's initially-filed Schedule I listed then current net monthly income of $10,830.33 and Schedule J listed monthly living expenses as of the commencement of the Case at $21,975.11, suggesting a negative disposable income of $11,144.78.  During the Case the debtor filed monthly operating reports stating his income and expenses which reflect:

| Month | Beginning Cash Balance | Income | Expenses | Profit/(Loss) | Docket No. |
|---|---|---|---|---|---|
| January 20, 2016 - March 2, 2016 | $ 3.572.14 | $ 9,592.13 | $11,849.37 | ($ 2,257.24) | 36[1] |
| March 3, 2016 – March 31, 2016 | $ 1,264.90 | $ 8,313.82 | $ 9,775.16 | ($ 1,461.34) | 37[2] |
| April, 2016 | ($   161.39) | $ 8,608.72 | $ 7,019.16 | $ 1,589.56 | 43 |
| May, 2016 | $ 1,333.17 | $ 6,098.82 | $ 5,421.11 | $   677.71 | 44 |
| June, 2016 | $ 1,203.39 | $ 7,938.82 | $ 7,222.15 | $   716.67 | 45 |

The Debtor has exercised his best efforts to increase his income and to decrease or eliminate monthly expenses and will continue to do so to the best of his ability.  Although, the Debtor is the sole arbiter of what discretionary expenses to incur and in what amounts, and the Debtor's decisions regarding his household living expenses do directly determine the Net Revenue which he will have as disposable income from which to make the distributions proposed in his

---

[1]   All of the income received in January, 2016, was received before the beginning of the reporting period, yet the last week of January expenditures were funded by the income received earlier in January.  This creates the apparent loss.  The ending cash balance in the first report was $1,314.90, however, the beginning cash balance on the second report was shown as $1,264.90.

[2]  The "Ending Cash Balance" on Page 2  of each Monthly Operating Report did not include paper checks issued by the debtor.  On Page 5, the debtor "backed out" the manual check amounts from the total on Page 2.  Each report includes a reconciliation page which captures those manual checks in the total disbursements amount.  As a result, the "Ending Cash Balance" on Line 5 at the conclusion of one report is not the same figure as the "Beginning Cash Balance" of the next month's report.

Plan which are summarized in this Statement, as debtor-in-possession, however, Mr. Pitt is cognizant of the fact that he is a fiduciary who must act in the best interests of his creditors, both to increase his income and to decrease his expenses, in order to return to his creditors as much as he is able. It is in that spirit that he has acted to eliminate or to reduce payment requirements as a means to increase his disposable income. The Debtor has culled his reports to summarize and total his categories of expenses. While some of the monthly expenses may at first impression seem high, the debtor's family is eight (8) persons – two adults and six children, and there have been exacerbating and extenuating medical circumstances which underlie these expenses. The Debtor's initial Schedule I of income and Schedule J of expenses reflected:

| Income: | Bruce | Debra |
|---|---|---|
| Social Security: | $2,997.00 | $ 0.00 |
| Pension/Retirement: | $5,833.33 | $ 0.00 |
| Rent 13301 Fox Chase Lane | $2,000.00 | $ 0.00 |
| | Total Income: | $ 10,830.33 |

| Expenses: | |
|---|---|
| Wells Fargo Bank, N.A., first lien 3945 Island Landing Court, Broomes Island, MD | $ 8,780.86 |
| Community Bank of Chesapeake, second lien 3945 Island Landing Court | $ 2,006.61[3] |
| DiTech Financial, LLC f/k/a Green Tree Servicing, LLC, first lien 13301 Fox Chase Lane, Spotsylvania, VA | $ 1,403.32[4] |
| Citibank, N.A., second lien 13301 Fox Chase Lane, Spotsylvania, VA | $ 1,210.74 |
| Home maintenance for repairs and upkeep | 500.00 |
| Electricity and hot water | 750.00 |
| Water and septic | 75.00 |
| Telephone, cellphone | 645.00 |
| Propane | 600.00 |
| Food and housekeeping supplies | 2,500.00 |
| Childcare and children education | 50.00 |
| Clothing, laundry and dry cleaning | 300.00 |
| Personal care | 10.00 |
| Medical and dental care | 250.00 |
| Transportation | 850.00 |
| Recreation, newspapers, books, cultural activities | 100.00 |
| Charitable contributions | 75.00 |
| Health insurance | 516.18 |
| Auto insurance | 550.00 |
| Dental insurance | 146.55 |

---

[3] This is the monthly amount that would be necessary to repay the secured debt of $102,218.49 shown on Proof of Claim No. 3 at a fixed stated interest rate of 6.625% per annum over a period of sixty (60) months.

[4] Exhibit 1 to DiTech Financial, LLC's motion for relief from the automatic stay, Docket No. 47-1, alleges a monthly payment of $1,409.00.

| | |
|---|---|
| Long-term care insurance | 146.05 |
| Real Estate Taxes on Lots | 250.00 |
| Property owner's insurance 13301 Fox Chase | 100.00 |
| Maintenance, repair, upkeep 13301 Fox Chase | 200.00 |
| Homeowner's Assoc./Condo Dues 13301 Fox | 91.67 |
| Granite State Student Loan | 151.00[5] |
| Navient Student Loan | 413.00 |

Total Expenses: $ 21,975.11

Average Net Monthly Disposable Income: ($ 11,144.78)

Inadvertently not included in this list of monthly living expenses was the payment due to Community Bank of Chesapeake, on its lien on 3955 Island Landing Court which is $616.00 monthly. Adding that expense creates the following results:

| | |
|---|---|
| From Schedule I: | Total Income: $ 10,830.33 |
| Community Bank of Chesapeake lien on | |
| 3955 Island Landing Court | $ 616.00 |
| Total all other Schedule J expenses: | $ 21,975.11 |

Total expenses: $ 22,591.11

The debtor has secured new employment after this Chapter 11 case was commenced and now projects the following gross and net monthly income:

| Income | Bruce | Debra |
|---|---|---|
| U.S. Treasury Dept. Gross $ 4,987.32; | | |
| Net: $4,179.59 | $9,230.98[6] | |
| Social Security: | $2,997.00 | $ 0.00 |
| Pension/Retirement: | $5,833.33 | $ 0.00 |
| Rent 13301 Fox Chase Lane | $2,000.00 | $ 0.00 |

Total Net Income: $20,061.31

Applying this new income to proposed Plan Expenses:

| | |
|---|---|
| HSBC Bank/Wells Fargo, first lien 3945 Island | |
| Landing Court, Broomes Island, MD | $ 8,780.86[7] |
| HSBC Bank/Wells Fargo pre-/post arrearages | $ 5,409.49[8] |

---

[5]   The debtor's eldest son, having recently obtained full-time employment, will be making these student loan payments, thereby relieving the debtor from these monthly expenses.

[6]   Debtor's paystub for his new employment for the period ending August 20, 2016, reflected a year-to-date 78 hours – which debtor is using on the expectation that he will work 80 hours during a bi-weekly pay period, which reflected gross year-to-date wages of $4,987.32 and net wages of $4,179.59 which multiplied by 2.2 pay periods per month is $9,230.98 bi-weekly net income.

[7]   Plan, Paragraph 3.5.2. on Page 10. The debtor continues to pursue voluntary loan modification with Wells Fargo Bank, N.A., to reduce this monthly obligation.

[8]   Plan, Paragraph 3.5.3. on Page 10. Loan modification with Wells Fargo Bank, N.A., would alleviate this proposed monthly obligation as a new mortgage payment would most probably encompass all alleged pre-petition and post-petition arrearages.

| | |
|---|---|
| Community Bank of Chesapeake, second lien 3945 Island Landing Court -- Class 6 | $ 2,006.61[9] |
| DiTech Financial, LLC f/k/a Green Tree Servicing, LLC, first lien 13301 Fox Chase Lane, Spotsylvania, VA | $  304.46[10] |
| Citibank, N.A., second lien 13301 Fox Chase Lane, Spotsylvania, VA | $  606.13[11] |
| Community Bank of Chesapeake lien on 3955 Island Landing Court | $  218.62[12] |
| Home maintenance for repairs and upkeep | 500.00 |
| Electricity and hot water | 750.00 |
| Water and septic | 75.00 |
| Telephone, cellphone | 645.00 |
| Propane | 600.00 |
| Food and housekeeping supplies | 2,500.00 |
| Childcare and children education | 50.00 |
| Clothing, laundry and dry cleaning | 300.00 |
| Personal care | 10.00 |
| Medical and dental care | 250.00 |
| Transportation | 850.00 |
| Recreation, newspapers, books, cultural activities | 100.00 |
| Charitable contributions | 75.00 |
| Health insurance | 516.18 |
| Auto insurance | 550.00 |
| Dental insurance | 146.55 |
| | |
| Real Estate Taxes on MD and VA Lots | 250.00 |
| Real Estate Taxes on 13301 Fox Chase property | 300.00 |
| Property owner's insurance 13301 Fox Chase | 100.00 |
| Maintenance, repair, upkeep 13301 Fox Chase | 200.00 |
| Homeowner's Assoc./Condo Dues 13301 Fox | 91.67 |
| Total Expenses: | $ 25,185.57 |

From the foregoing compilation, which includes the payment of secured obligations as presently proposed in the debtor's Plan, including those secured debts which the Plan proposes to restructure, the debtor believes that the generation of  net monthly disposable income from which administrative, priority, or unsecured debts could be paid will turn upon the debtor's success in obtaining a loan modification from Wells Fargo Bank, N.A., with respect to its first deed of trust lien against the debtor's residence which is the Class 5 Secured Claim.

---

[9]   Plan, Paragraph 3.6.2. on Page 11.

[10]  Plan, Paragraph 3.7.2. on Page 12.

[11]  Plan, Paragraph 3.8.2. on Pages 13-14.

[12]  Plan, Paragraph 3.9.2. on Page 15.

Class 5 consists of the Allowed Secured Claim, as described in § 1.30 of the Plan, of HSBC Bank USA, National Association as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-14, account no. xx3061, as the holder of a first Deed of Trust dated April 6, 2007, recorded April 11, 2007, among the Land Records of Calvert County, Maryland at Liber 2970, folio 337 *et seq*., encumbering the debtor's residential real property and improvements known as 3945 Island Landing Court, Broomes Island, MD 20615, in the amount of $1,743,335.54, the balance alleged on Proof of Claim No. 4 (which was scheduled amount of $1,469,999.61). The debtor upon confirmation shall commence and shall maintain regular monthly principal and interest payments each in the amount of $8,780.86 with no modification of the secured debt. Pre-petition arrears of $271,884.51, as stated on the proof of claim, and post-petition arrearages of an estimated additional $52,685.16 as of July 1, 2016, totaling $324,569.57, shall be repaid over a period of sixty (60) months without interest commencing thirty (30) days after confirmation of a Plan (the Effective Date) at $5,409.49 monthly, contemporaneously with the payment of Allowed Claims in Class 1 and Class 2, and after any distribution on Allowed Claims in Classes 3 and 4. The Class 5 Secured Creditor shall retain its lien. The debtor shall bear the responsibility of the payment of real property taxes directly to Calvert County, Maryland, and for the maintenance of hazard and risk insurance. In the event that the debtor shall determine it to be in his best financial interest to sell this real property collateral, the Class 5 Creditor shall be given notice and an opportunity to be heard. The debtor believes that this proposal offers the Class 5 Creditor stability and a performing loan, and the debtor encourages this Secured Creditor to cast a Ballot voting to accept this Plan. The debtor believes that this Class is impaired pursuant to 11 U.S.C. §.1124(2)(A) – (E) and is entitled to cast a Ballot for the acceptance of the Plan.

Class 6 consists of the Allowed Secured Claim, as described in § 1.30 of the Plan, of Community Bank of Chesapeake (formerly Community Bank of Tri-County) on its account xx0579l, as the holder of Judgment lien entered December 1, 2014, in the principal sum of $94,586.54 by the Circuit Court for Calvert County in Case No. 14-5243, jointly and severally against the debtor and his wife, Debra K. Pitt, encumbering the debtor's residential real property and improvements known as 3945 Island Landing Court, Broomes Island, MD 20615, in the amount of $102,218.49 (scheduled at a balance of $87,238.56) as alleged on Proof of Claim No. 3. The secured debt of $102,218.49, shall be repaid with interest at the stated fixed rate of 6.625% per annum over a period of sixty (60) months commencing thirty (30) days after confirmation of a Plan (the Effective Date) at $2,006.61 monthly, contemporaneously with the payment of Allowed Claims in Class 1 and Class 2, and after any distribution on Allowed Claims in Classes 3 and 4. The debtor shall bear the responsibility of the payment of real property taxes directly to Calvert County, Maryland, and for the maintenance of hazard and risk insurance. In the event that the debtor shall determine it to be in his best financial interest to sell this real property collateral, the Class 6 Creditor shall be given notice and an opportunity to be heard. The debtor believes that this proposal offers the Class 6 Creditor stability and a performing loan, and the debtor encourages this Secured Creditor to cast a Ballot voting to accept this Plan. The Class 6 Secured Creditor shall retain its lien. The debtor believes that this Class is impaired pursuant to 11 U.S.C. §.1124(2)(A) – (E) and is entitled to cast a Ballot for the acceptance of the Plan.

Class 7 consists of the Allowed Secured Claim, as described in § 1.30 of the Plan, of DiTech Financial, LLC f/k/a Green Tree Servicing, LLC, arising from its first Deed of Trust dated December 14, 1994, encumbering the investment real property and improvements known as 13301 Fox Chase Lane, Spotsylvania, VA 22553, in the amount of $100,540.09 balance (scheduled at a balance of $102,100.00) as alleged on Proof of Claim No. 6.   Pre-petition   arrearages of  $309.58 as shown on the creditor's proof of claim and post-petition were brought current in connection with the withdrawal of the Class 7 Secured Creditor's motion for relief from the automatic stay, The secured debt of $100,540.09 shall be restructured to a new principal balance  and shall be repaid with interest fixed at  2.00% per annum and   amortized over a period of forty (40) years payable monthly at $304.46 commencing thirty (30) days after confirmation of a Plan (the Effective Date), contemporaneously with the payment of Allowed Claims in Class 1 and Class 2, and after any distribution on Allowed Claims in Classes 3 and 4.  The Class 7 Secured Creditor shall retain its lien.  The debtor shall bear the responsibility of the payment of real property taxes directly to Spotsylvania County, Virginia, and for the maintenance of hazard and risk insurance.  In the event that the debtor shall determine it to be in his best financial interest to sell this real property collateral, the Class 7 Creditor shall be given notice and an opportunity to be heard. The debtor believes that this proposal offers the Class 7 Creditor stability and a performing loan, and the debtor encourages this Secured Creditor to cast a Ballot voting to accept this Plan.   The debtor believes that this Class is impaired pursuant to 11 U.S.C. §.1124(2)(A) – (E) and is entitled to cast a Ballot for the acceptance of the Plan.

Class 8 consists of the Allowed Secured Claim, as described in § 1.30 of the Plan, of Citibank, N.A., arising from its second Home Equity Line of Credit and Disclosure Deed of Trust lien dated October 14, 2003, recorded December 10, 2003, among the Land Records of Spotsylvania County, VA LR No. 200300052071, account xxx756, encumbering the investment real property and improvements known as 13301 Fox Chase Lane, Spotsylvania, VA 22553, in the amount of $177,200.64 balance (scheduled at a balance of $175,957.64) as alleged on Proof of Claim No. 5.   The secured debt of $177,200.64 plus pre-petition of arrearages of $16,693.23 as shown on the creditor's proof of claim and post-petition which are estimated as of July 1, 2016, to be an additional $7,264.44, totaling $201,158.31, shall be restructured to a new principal balance of  $201,158.31 and shall be repaid with interest fixed at 2.00% per annum and  amortized over a period of forty (40) years payable monthly at $609.16 commencing thirty (30) days after confirmation of a Plan (the Effective Date), contemporaneously with the payment of Allowed Claims in Class 1 and Class 2, and after any distribution on Allowed Claims in Classes 3 and 4.    The debtor shall bear the responsibility of the payment of real property taxes directly to Spotsylvania County, Virginia, and for the maintenance of hazard and risk insurance.  In the event that the debtor shall determine it to be in his best financial interest to sell this real property collateral, the Class 8 Creditor shall be given notice and an opportunity to be heard.  The debtor believes that this proposal offers the Class 8 Creditor stability and a performing loan, and the debtor encourages this Secured Creditor to cast a Ballot voting to accept this Plan.  The Class 8 Secured Creditor shall retain its lien.  The debtor believes that this Class is impaired pursuant to 11 U.S.C. §.1124(2)(A) – (E) and is entitled to cast a Ballot for the acceptance of the Plan.

Class 9 consists of the Allowed Secured Claim, as described in § 1.30 of the Plan, of Community Bank of Chesapeake (formerly Community Bank of Tri-County), arising from first Deed of Trust and Security Agreement  lien dated June 13, 2007, recorded June 25, 2007, among the Land Records of Calvert County, Maryland at Liber 3010, folio 604 *et seq*., account xxx3503, and modified by Agreement dated June 21, 2013, recorded June 25, 2007, among the Land Records of Calvert County, Maryland at Liber 4230, folio 274 *et seq*., encumbering the investment real property known as 3955 Island Landing Court, Broomes Island, MD 20615, in the amount of $68,576.00 as alleged on Proof of Claim No. 2.  The secured debt of $68,576.00 with no pre-petition arrearage as shown on the creditor's proof of claim and post-petition which are estimated as of July 1, 2016, to be an additional $3,696.00, totaling $72,272.00, shall be restructured to a new principal balance of  $72,272.00 and shall be repaid with interest fixed at 2.00% per annum and  amortized over a period of forty (40) years payable monthly at $218.62 commencing thirty (30) days after confirmation of a Plan (the Effective Date), contemporaneously with the payment of Allowed Claims in Class 1 and Class 2, and after any distribution on Allowed Claims in Classes 3 and 4.  The Class 9 Secured Creditor shall retain its lien.  The debtor shall bear the responsibility of the payment of real property taxes directly to Calvert County, Maryland, and for the maintenance of hazard and risk insurance.  In the event that the debtor shall determine it to be in his best financial interest to sell this real property collateral, the Class 9 Creditor shall be given notice and an opportunity to be heard.  The debtor believes that this proposal offers the Class 9 Creditor stability and a performing loan, and the debtor encourages this Secured Creditor to cast a Ballot voting to accept this Plan.  The debtor believes that this Class is impaired pursuant to 11 U.S.C. §.1124(2)(A) – (E) and is entitled to cast a Ballot for the acceptance of the Plan.

Class 10 consists of the Allowed Unsecured Claims not entitled to priority holding unsecured claims against the debtor either individually or jointly owed by his non-filing spouse, Debra K. Pitt, including long-term contractual initially- (and still) unsecured obligations shall receive a *pro rata* distribution on the amount of their respective Allowed Claims in the total amount as determined by the amounts listed by the debtor on Schedule E/F or as shown on a timely filed proof of claim as shown below:

| Claimant    /    Account NO. | Debt | Amount Scheduled | Amount Claimed | Claim Number | Difference |
|---|---|---|---|---|---|
| Granite State Management | Student Loans | $  4,000.00 | --- | --- | --- |
| Navient | Student Loans | $13,000.00 | --- | --- | --- |
| Harvard Alumni Card | Credit Charges | $22,467.60 | --- | --- | --- |

By Order entered on or about January 21, 2016, the Bar Date deadline for the timely filing of proofs of claim was May 23, 2016, for all creditors except a governmental unit and July 18, 2016, for a governmental unit.  No proof of claim was filed by any unsecured creditor.  The amount of general unsecured debts listed on Schedule F by the debtor was, as shown above, $39,467.60.

Proposal:  After the payment of Allowed Claims in Classes 1, 2, 3, if any, and 4, and contemporaneously with the payments on Allowed Secured Claims in Classes 5, 6, 7, 8, and 9, Allowed Unsecured Claims in Class 10 will be paid *pro rata* in the ordinary course of the

Debtor's financial affairs on the value of their Allowed Claims as of the Effective Date of the Plan in quarterly cash installments from the Unsecured Creditors Distribution Fund established by the debtor until all such Allowed Unsecured Claims have been paid in full without interest over a period not to exceed five (5) years from the Effective Date of the Confirmed Plan.   Payment of Allowed Claims in Classes 1 (for US Trustee fees at an estimated $975.00 per quarter would be $326.00 per month and would reduce disposable income, 2 ($30,000.00 after the credit of the initial retainer for administrative costs estimated to complete this Case), 3 (priority security deposits); 4 (tax liabilities of $0.00); and payments to Classes 5, 6, 7, 8, and 9 (secured arrearages in the respective amounts of  $324,569.57, $102,218.49, $100,540.09, $201,158.31, and $72,272.00, to be repaid in monthly installments in the respective amounts of $5,409.49; $2,006.61; $304.46; $606.13; and $218.62, unless otherwise altered by loan modification, are proposed to be repaid over five (5) years from the Effective Date of a Confirmed Plan; Class 10 Allowed Unsecured Claims will be contemporaneously repaid over the same 60-month period in quarterly installments commencing ninety (90) days after the Effective Date of a confirmed Plan *pro rata* without interest on the value of their Allowed Claims from the Unsecured Creditors Distribution Fund established by the debtor after the payment of Allowed Claims in Classes 1, 2, and 3. The debtor believes that Class 10 is impaired but it is proposed that all .Allowed Claims in Class 10 would receive full payment. The debtor reiterates that this distribution is based upon his Net Revenue/Disposable Income such that if actual income is higher and/or actual expenses are lower than projected, then the distribution to Class 10 Creditors in any given quarter will be greater.

The debtor under his Plan will make payments for a total of five (5) years (60 months) to all Allowed Unsecured Claims net of quarterly fees due to the Office of the U.S. Trustee, and therefore, following the completion of the distribution on Allowed Claims in Classes 1, 2, and 3 and accounting for the payment of U.S. Trustee quarterly fees, states that the distribution to Allowed Unsecured Claims in Class 10 will be one hundred (100%) percent without interest in light of the non-exempt equity in assets which in a hypothetical liquidation under Chapter 7 would result in the same one hundred (100%) percent distribution.

Class 11 is a Class of Interest Holders, that is, Mr. Pitt, who holds an interest in the assets to be retained, held, and/or received by him after Confirmation.  In consideration for the debtor's retention of exempt and non-exempt assets and for the entry of a Confirmation Order, Mr. Pitt shall tender the sum of One Thousand Five Hundred Dollars ($1,500.00) from his claimed as exempt and allowed pre-petition bank account balances in addition to his Net Revenue for distribution under his Confirmed Plan for the payment of Allowed Claims, including those in Class 10 for a period of five (5) years from the Effective Date of the Confirmed Plan which period exceeds the Applicable Commitment Period under the Form B22C Means Test. 11 U.S.C. § 1129(a)(15)(B)(ii).  In so proposing, the debtor is addressing his compliance with the absolute priority rule and thus believes and contends that his plan is capable of confirmation.

The Plan also provides for amendments and modifications, the waiver of certain charges, the discharge of debts, and sets forth certain deadlines and provisions under which the Bankruptcy Court will retain jurisdiction.  The main thrust of the Plan, and consequently

the prime direction of this Statement, is to unsecured creditors.  As discussed above, unsecured creditors shall receive a quarterly distribution from the Unsecured Creditors Distribution Fund in payment of Allowed Claims in Class 10 after the completion of payment and distribution in full Allowed Claims in Classes 1, 2, 3, and 4 to Allowed Administrative and Allowed Priority Claims and contemporaneously with Secured Claims. The holders of Allowed Unsecured Claims in Class 10 shall receive a *pro rata* distribution from the Unsecured Creditors Distribution Fund   The debtor projects a distribution of one hundred percent (100%) to his creditors holding Allowed Unsecured Claims in Class 10.  Disbursements shall be made from the Unsecured Creditors Distribution Fund in quarterly installments to Class 10 after the Effective Date of the Plan.  It is the debtor's opinion that any payment to non-priority general unsecured creditors in Class 10 would provide a greater payment to these creditors than would be realized through the liquidation of the debtor's non-exempt assets in a Chapter 7 case, particularly in light of the fact that the debtor's future income would not be an asset available for distribution in a Chapter 7 case.

THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES.  CREDITORS ARE URGED TO READ THE PLAN IN FULL.  CREDITORS ARE FURTHER URGED TO CONSULT WITH COUNSEL, OR WITH EACH OTHER, IN ORDER TO FULLY UNDERSTAND THE PLAN.  THE PLAN IS COMPLEX INASMUCH AS IT REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BY THE DEBTORS, AND AN INTELLIGENT JUDGMENT CONCERNING THIS PLAN CANNOT BE MADE WITHOUT UNDERSTANDING IT.

IV.  FINANCIAL INFORMATION.
A.  Analysis of Liabilities.

In order for a creditor to arrive at a reasonably informed decision before exercising the right to vote on a Plan of Reorganization, the proposed distribution under a Plan must be considered in light of what the creditor could reasonably anticipate receiving under the alternative of a liquidation (Chapter 7) case.  In arriving at this decision, a creditor must consider two factors: (1) the liabilities to be paid in a Chapter 7 case in the order of their priority as established by the Bankruptcy Code, and (2) the liquidation value of the debtor's assets in a Chapter 7 case.

The first area of inquiry encompasses the liabilities as scheduled by the debtor or as claimed by the creditors.  The debtor's schedules, claims filed, and Orders of the Bankruptcy Court reflect the following debts:

Secured debts:

| | | |
|---|---|---|
| Wells Fargo Bank, N.A. | $1,743,335.54 | POC 4 1st DOT 3945 Island Landing Ct |
| Community Bank of Ches. | $  102,218.49 | POC 3 2nd Judgment Lien 3945 Island |
| DiTech Financial | $  100,540.09 | POC 6 1st DOT 13301 Fox Chase Lane |
| Citibank, N.A. | $  201,158.31 | POC 5 2nd DOT 13301 Fox Chase Lane |
| Community Bank of Ches. | $    72,272.00 | POC 2  1st DOT 3955 Island Landing Ct |
| Total: | $2,219,524.43 | |

Priority debts:

| | | | |
|---|---|---|---|
| Internal Revenue Service: | $ 0.00 POC 1 | $ 0.00 | |
| Mr./Mrs. Levi Williamson | $ 2,000.00 | $ 2,000.00 | |
| General Unsecured debts: | $ 39,467.60 | $ 39,467.60 | |
| | | Total: | $2,260,992.03 |

In a Chapter 7 proceeding, in addition to and prior to any payment on the foregoing liabilities, the bankruptcy estate would be responsible for the payment of the costs of administration incurred by the trustee in the Chapter 7 case and the costs of administration incurred by the debtor in the Chapter 11 case as may be approved by the Bankruptcy Court.  Chapter 11 administrative expenses are estimated at $17,500.00 and are classified in Class 2.  Chapter 7 administrative expenses would consist primarily of trustee's commissions and expenses for the liquidation of the debtor's assets as established by the Bankruptcy Code and any professional fees incurred by the trustee for attorneys or accountants; these are estimated at $10,000.00  The proceeds of the sale of the debtor's non-exempt assets, if any, would first distributed to these debts and then priority tax debts, if any, and only then to the payment of general unsecured claims in the following priority:

| | |
|---|---|
| Chapter 7 administrative expenses (est.) | $ 10,000.00 |
| Chapter 11 Administrative Expenses (est.) | $ 17,500.00 |
| Scheduled Secured, Tax and Unsecured debts: | $2,260,992.03 |
| Total: | $2,288,492.03 |

B.  Analysis of Assets.

In determining the second factor, the liquidation value of the debtor's assets, the accepted standards of valuation are:

| | |
|---|---|
| Book Value: | Acquisition cost less depreciation, if any. |
| Going Concern Value: | Estimated market value, regardless of cost, of a business continuing in operation. |
| Liquidation Value: | Value estimated to be realizable in the event of a forced liquidation. |

The schedules of assets filed by the debtor show the following assets and fair market values:

| Real property | Value | Liens | Exemption | Equity |
|---|---|---|---|---|
| 3945 Island Landing Court Broomes Island, MD 20615 | $ 990,000.00 | $1,469,999.61 WellsFargo $ 87,238.56 CommBk.  POC3 | $22,975.00 | $ 0.00 |
| 13301 Fox Chase Lane Spotsylvania, VA 22553 | $350,000.00 | $ 102,100.00 DiTech  POC6 $ 175,957.64 Citibank 1st POC5 | | $71,942.36 |
| 3955 Island Landing Court Broomes Island, MD 20615 | $ 60,000.00 | $ 77,846.05 Comm.Bk Lot 8 POC2 | | $ 0.00 |
| 13303 Fox Chase Lane Spotsylvania, VA 22553 | $30,000.00 | No lien | | $30,000.00 |

| Personal property | Value | Liens | Exemption | Equity |
|---|---|---|---|---|
| Cash on hand | $       50.00 | | $       50.00 | $       0.00 |
| Community Bank of Chesapeake | | | | |
| checking account | $     150.00 | | $     150.00 | $       0.00 |
| Bank of America TSS, Inc. | $ 14,241.64 | | $       0.00 | $ 14,241.64 |

| Personal property | Value | Liens | Exemption | Equity |
|---|---|---|---|---|
| Stock: | | | | |
|    Vinculum Solutions, Inc. | $       0.00 | | $       1.00 | $       0.00 |
|    Tax Systems Solu., Inc. | $       0.00 | | $       1.00 | $       0.00 |
| Retirement/pension accounts: | | | | |
|   Charles Schwab | $ 45,000.00 | | $ 45,000.00 | $       0.00 |
| Beneficiary wife's retirement | $     200.00 | | $     300.00 | $       0.00 |
| Social Security | $   2,997.00 | | $   2,997.00 | $       0.00 |
| Civil Service Retirement | $ 75,000.00 | | $ 75,000.00 | $       0.00 |
| Rent Rec from Vinculum | | | | |
|   Solutions, Inc. | $ 45,000.00 | | $       0.00 | $45,000.00 |
| Wages owed by TSS, Inc. | $ 55,000.00 | | $       0.00 | $55,000.00 |
| Wages owed by Vinculum | | | | |
|   Solutions, Inc. | $160,000.00 | | $       0.00 | $160,000.00 |
| Patents, copyrights: | | | | |
|   Pass Through Entities | | | | |
|   Visualization ComputerProg | $       1.00 | | $       1.00 | $       0.00 |
| Household goods furnishings | $ 15,000.00 | | $ 15,000.00 | $       0.00 |
| Wearing apparel | $     300.00 | | $     300.00 | $       0.00 |
| Jewelry 2 rings | $       50.00 | | $       50.00 | $       0.00 |
| 6 TV's, stereo, TV receivers | $   2,000.00 | | $   2,000.00 | $       0.00 |
| Golf Clubs | $     100.00 | | $     100.00 | $       0.00 |
| Remington semi-auto shotgun | | | | |
|   30.06 rifle, colt .22 pistol | $     800.00 | | $       0.00 | $     800.00 |
| 2005 Lincoln Navigator sole | $   4,000.00 | | $   4,000.00 | $       0.00 |
| 2005 Linc. Aviator Jw/Angela | $   2,000.00 | | $   3,000.00 | $       0.00 |
| 1988 Pontiac Fiero sole | $     700.00 | | $     700.00 | $       0.00 |
| 2001 Isuzu Vehicross JwWife | $   2,500.00 | | $   1,250.00 | $       0.00 |
| 1983 Regal 245XL BadMotor | $   3,500.00 | | $   3,300.00 | $     200.00 |
| 2009 Cadillac SUV Jw/Wife | $   9,000.00 | | $   4,500.00 | $       0.00 |
| Miscellaneous hand tools | $     600.00 | | $     300.00 | $       0.00 |
| 4 dogs & 2 cats | $       60.00 | | $       60.00 | $       0.00 |

Total Non-exempt Equity:    $377,183.36

Experience has proven that there is a substantial difference in the valuation of assets between the book value and the value actually realized upon liquidation. Therefore, the central issue is what the debtor or his Chapter 7 trustee would realize from the debtor's assets in the event that the debtor were forced to convert his Chapter 11 case to a Chapter 7 case and were his non-exempt assets forced to be liquidated at public sale.

REAL PROPERTY

The debtor and his non-filing spouse have no equity in their personal residence at 3945 Island Landing Court, Broomes Island, MD 20615, as the deed of trust and judgment liens against it held by Wells Fargo Bank and Community Bank exceed the debtor's valuation of this property at $990,000.00. Similarly, the debtor and his non-filing spouse have no equity in the adjacent lot at 3955 Island Landing Court, Broomes Island, MD 20615, as the deed of trust lien held by Community Bank exceed the debtor's valuation of this property at $60,000.00. The debtor believes that the investment real property and improvements at 13301 Fox Chase Lane, Spotsylvania, VA 22553 may have equity of $71,942.36 which exceeds his allowed exemptions and has not been claimed as exempt. Similarly, the adjacent lot at 13303 Fox Chase Lane, Spotsylvania, VA 22553, is unencumbered and its value of $30,000.00 exceeds his allowed exemptions and has not been claimed as exempt. The non-exempt equity in these real properties exceeds the debtor's priority and general unsecured obligations, even considering liquidation values and costs and expenses of sale, necessitating repayment of the debtor's unsecured obligations in full through this reorganization case.

CASH ON HAND AND ON DEPOSIT

At the time of the filing of the voluntary petition, the debtor had cash on hand of $50.00 and $150.00 in a checking account at Community Bank of Chesapeake both of which assets have been fully exempted. These funds would not be available assets for distribution in a hypothetical Chapter 7 case. In addition, $14,241.64 in funds belonging to Tax Systems Solutions, Inc., in an account at Bank of America in the debtor's individual name were also scheduled as assets, but have not been claimed as exempt and would, hypothetically, be part of a Chapter 7 liquidation estate to the extent that such funds might continue to exist were the Chapter 11 case to be converted.

PERSONAL PROPERTY

The debtor's household goods and furnishings valued at $15,000.00 which he owns as a tenant by the entirety with his non-filing spouse, were claimed as exempt without objection. Wearing apparel of $300.00, jewelry of $50.00; televisions, stereo, and receivers valued at $2,000.00, golf clubs valued at $100.00, and various firearms of $800.00, have all been claimed and allowed as exempt. No funds would be available for distribution in a Chapter 7 case from any of these assets.

PENSIONS AND RETIREMENT ACCOUNTS

The debtor has scheduled and exempted his interest as a beneficiary under his wife's retirement account at $200.00, and his interests in a Charles Schwab retirement/pension account at $45,000.00; Social Security received monthly at $2,997.00, and a Civil Service Retirement valued at $ 75,000.00, all of which have an uncapped, unlimited exemption. Each of these assets has been claimed and allowed as exempt. No funds would be available for distribution in a Chapter 7 case.

MOTOR VEHICLES

The debtor has scheduled his ownership interests, both solely and jointly with his wife and his daughter, in five (5) unencumbered motor vehicles – a 2005 Lincoln Navigator (owned

solely) valued at $ 4,000.00; a 2005 Lincoln Aviator (owned jointly with his daughter) valued at$2,000.00; a 1988 Pontiac Fiero  (owned solely) valued at $ 700.00; a 2001 Isuzu Vehicross (owned jointly with his wife) valued at $2,500.00; a 2009 Cadillac SUV (owned jointly with his wife) with his interest valued at $4,500.00 – all of which value has been fully claimed and exempted; and a 1983 Regal 245XLwith a bad motor valued at $3,500.00 of which $3,300.00 has been claimed and exempted leaving at best a non-exempt value of $200.00, which might be available in a Chapter 7 liquidation presuming no expenses of sale were incurred and no liquidation value resulted – both of which are not reasonable assumptions.  No funds would be available for distribution in a Chapter 7 case.

CONTINGENT CLAIMS
As required, Mr. Pitt also scheduled various contingent claims which he has against his wholly-owned corporations – a claim for rent receivable from Vinculum Solutions, Inc. in the amount of $45,000.00; a claim for unpaid wages due from Tax Systems Solutions, Inc., for $55,000.00; and a claim for unpaid wages due from Vinculum Solutions, Inc., in the amount of $160,000.00 – none which claims is collectible. In a Chapter 7 liquidation case, while a trustee would be entitled to sue these companies to attempt to collect these contingent claims, the fact is that were these claims viable, Mr. Pitt would not have had the need to file this Chapter 11 case.  Realistically, no funds from any of these claims would be distributable to creditors in a Chapter 7 case.

BUSINESS INTELLECTUAL PROPERTY
Mr. Pitt is the sole stockholder in both Vinculum Solutions, Inc., and in Tax Systems Solutions, Inc., and in both instances has valued his ownership interest at $0.00.  As discussed above, each of these corporations owes contingent claims to Mr. Pitt which when recorded on each corporation's balance sheet results in there not being any value to Mr. Pitt's ownership interests.  Furthermore, Mr. Pitt scheduled his individual ownership interest in a Pass Through Entities Visualization Computer Program which he valued at $1.00 and exempted without objection.  Note of these assets is anticipated to produce any value to creditors for distribution in a Chapter 7 case.

OTHER PERSONAL PROPERTY
Mr. Pitt listed four (4) dogs and two (2) cats at a total value of $60.00 and fully exempted that value without objection.  In addition, the debtor scheduled miscellaneous hand tools valued at $600.00 which were exempted to the extent of $300.00 leaving the remaining $300.00 hypothetically available for distribution in a Chapter 7 case.

EXEMPTIONS
The debtor is entitled to Twelve Thousand Dollars ($12,000.00) of equity in his assets and personal belongings as exempt pursuant to the provisions of the Maryland Annotated Code, Courts and Judicial Proceedings Article, Section 11-504(b)(4), (5), and (f), in addition to the unlimited exemptions for his retirement and pension plans and his Social Security income, as well as the exemption of assets which he owns as a tenant by entirety with his spouse.  These exemptions have been claimed and allowed, and reduce the available equity for the benefit of unsecured creditors.

In the foregoing asset-by-asset analysis, the debtor has disclosed and valued his real and personal assets, has disclosed the interests asserted by secured creditors against his real and personal property, and has quantified the equity in those assets which would be available, and has disclosed the claims of exemptions made by him and allowed with respect to the equity in his property.

After the satisfaction of secured claims, which have been taken into account by the foregoing analysis and the application of the exemptions to which the debtor is entitled under Maryland and federal law, the debtor calculates non-exempt equity in the amount of $377,183.36, however, that figure includes the wholly uncollectible rent receivable of $45,000.00 due from Vinculum Solutions, Inc.. and includes the wholly uncollectible wages receivable of $160,000.00 and $55,000.00 due from Vinculum Solutions, Inc., and Tax Systems Solutions, Inc., which total $260,000.00 ($45,000.00 + $160,000.00 + $55,000.00 = $260,000.00). Discounting the total non-exempt assets of $377,183.36 by this $260,000.00, nonetheless results in non-exempt assets of $117,183.36 ($377,183.36 - $260,000.00 = $117,183.36), which even considering liquidation value and liquidation expenses would nonetheless exceed the Allowed general Unsecured Claims in Class 10 of $39,467.60. It is for this reason that the debtor's Plan proposes full payment without interest to the holders of Allowed general Unsecured Claims in Class 10 over a period of five (5) years from the Effective Date of a confirmed Plan of Reorganization.

    C.  Analysis of Financial Performance.

The debtor has filed monthly reports of the income and expenses disclosing his net revenue and demonstrating the generation of the disposable income proposed to be distributed under his Plan of Reorganization. The debtor believes that his monthly reports filed in the Chapter 11 case demonstrate the feasibility of the proposal made by him to Priority Creditors and to General Unsecured Creditors in his Plan of Reorganization. It is the debtor's best projection from presently known factors and all available information that at most $*.00 per month will be generated from the debtor's future personal Net Revenue as Disposable Income and thus $*.00 per month net of quarterly fees due to the Office of the U.S. Trustee for disbursement under the Plan of Reorganization which will be used first for the payment of Administrative and Priority Creditors, and then for the payment of Class 10 general unsecured debts. The debtor believes that his anticipated income and expenses will remain stable during the pendency of the Plan. The successful consummation of the debtor's Plan of Reorganization will be dependent upon continued stable employment and the avoidance of extraordinary expenses. Future income is NOT available to creditors in a Chapter 7 liquidation case. As a consequence, the debtor's dedication of post-petition income under the Plan as a mechanism for the payment of his debts provides more in distribution than the funds that would be available from the liquidation of the debtor's real and personal assets for the payment of pre-petition unsecured claims.

This analysis has been prepared by the debtor in good faith in an attempt to justify and assure unsecured creditors that any distribution offered under the debtor's Plan is greater than the distribution that could reasonably be expected in a Chapter 7 liquidation case.

V.  <u>OBJECTIONS TO PROOFS OF CLAIM</u>.

Creditors may have filed proofs of claim stating amounts with which debtor may disagree and believes are erroneous.  In addition, creditors may have filed proofs of claim asserting personal liability on the part of the debtor to which he may disagree.  The debtor may file objections to claims, on any basis, including improper amount, improper claim as to classification hereunder, lack of consideration, or otherwise.  Any objection to claims shall be filed by the debtor no later than ninety (90) days after the Effective Date of the Plan.

The Plan provides for the Court to retain jurisdiction for the purposes of resolving objections to claims which may be filed after the Effective Date of the Plan.  The filing of an objection to any proof of claim filed against the debtor and/or his estate shall preclude the consideration of any such claim as "Allowed" for the purposes of a distribution which otherwise might be due to such claimant in accordance with the terms of the Plan.  In all contested proof of claim matters, distributions upon the claim amount, to the extent it has actually become payable, will be deposited in a non-interest bearing escrow account pending resolution of the dispute, either through negotiation or judicial determination.  If the objection is sustained, in whole or in part, or if any claim is determined to be in the amount of zero ($0.00) dollars, then the funds previously reserved to which the creditor may no longer be entitled to receive as distribution shall be redistributed among creditors *pro rata* as appropriate.

VI.  <u>INFORMATION PERTAINING TO THE DEBTORS AND CONSIDERATIONS RELEVANT TO DEBTORS' RECOMMENDATION OF THE PLAN</u>.

A.  <u>Recommendation</u>.

The debtor recommends a vote for acceptance of the Plan.  The recommendation is based upon the assessment of the present financial condition of the debtor and the foregoing analysis of the debtor's assets and liabilities.  The debtor has exercised his best effort to secure and enhance the funds available for distribution.  The only alternative to distribution under this Plan is conversion from Chapter 11 to Chapter 7.  Since conversion would diminish the funds available for distribution as the result of the additional expenses and costs incident thereto, the debtor has formulated his Plan to provide the greatest possible distribution consistent with the schedule of priorities under the Bankruptcy Code.  The most current financial information relating to the debtor is reflected in the debtor's statement of financial affairs, schedules of assets and liabilities, and monthly statements of income and expenses and receipts and disbursements filed with the Bankruptcy Court.  Copies of these financial reports are on file with, and available for inspection at, the Office of the Clerk for the United States Bankruptcy Court for the District of Maryland, Southern Division, 3rd Floor, U.S. Courthouse, 6500 Cherrywood Lane, Greenbelt, Maryland 20770, weekdays between hours of 8:00 a.m. and 4:00 p.m.  The financial reports on file with the Bankruptcy Court demonstrate the funds received by the debtor and the disbursement of those funds for living expenses and the payment of his secured and unsecured indebtednesses.  The debtor believes that the best potential for a distribution to his creditors is the confirmation and consummation of this Plan.

B.  <u>Tax Ramifications</u>.

Any distribution under the Plan entails certain tax consequences for the recipient. In addition, the debtor's discharge of his obligations upon substantial consummation of his Plan will impact his creditors. The debtor makes no representation with regard to any such tax consequences. To the extent necessary, you may wish to consult with your financial or tax advisor. Certainly, the receipt of income by the debtors has tax ramifications to the debtors as well, which in turn, could reduce the projected disposable income. The debtor's discharge will also have tax implications for the debtor which may affect his future disposable income. In particular, the sale or other disposition of any of the debtor's property may result in capital gains or other tax consequences to the debtor under circumstances where the debtor may not receive any monetary benefit from the sale of the property in light of a lack of equity, ne-cessitating the use of the debtor's present disposable income for the payment of these tax consequences. The debtor is utilizing his future income for the payment of debts to retain possession of property -- particularly under circumstances where there may be little or no equity which might be available to general unsecured creditors, it is reasonable for the debtors to propose that the future income also pay any future tax liability, including tax liability which will arise from the discharge of indebtedness. These and other tax consequences have not been taken into account in the formulation of their Plan and thus the debtor's future ability to maintain the payments which they have proposed to make may be impacted by events which can not be anticipated or foreseen.

## VI. VOTING AND IMPAIRMENT.

Claimants entitled to vote under the Plan must affirmatively act in order for the Plan to be confirmed by the Court by casting a ballot. A ballot to be completed by the holders of Claims will be included with the approved Statement. The ballot should be completed and returned to the debtors' undersigned counsel.

According to the debtor's Plan, Class 1 (Administrative Claim of the Office of the United States Trustee), Class 2 (Allowed Administrative Claims), Class 3 (Priority pre-petition security deposits Claims), and Class 4 (Priority pre-petition tax claims pursuant to 11 U.S.C. § 507(a)(8)) are receiving the treatment of their claims as required by the Bankruptcy Code and are non-voting Classes. These classes are conclusively presumed to have accepted the Plan.

According to the debtor's Plan, Class 5 (Wells Fargo Bank, N.A.), Class 6 (Community Bank of Chesapeake), Class 7 (DiTech Financial, LLC f/k/a Green Tree Servicing, LLC,),Class 8 (Citibank, N.A.), and Class 9 (Community Bank of Chesapeake), consisting of Allowed Secured Claims against the debtor's residence and other investment real property, are impaired under the Plan and are entitled to cast Ballots with respect to the acceptance of the Plan, and in each instance, the debtor's Plan proposes that each Claimant in each Class is being paid the full amount of its secured liability and is retaining its lien to the extent of the value of the collateral and any arrearage owed on the Secured Claim is being paid in what the debtor contends is a reasonable period of time.

According to the debtor's Plan, Class 10 is impaired. Class 110 consisting of the Allowed Claims of Unsecured Creditors is impaired within the meaning of § 1124 of the Bankruptcy Code and will receive a *pro rata* quarterly distribution of such claims over five (5) years

commencing ninety (90) days following the Effective Date of the Plan totaling the full amount of each Class 10 Claim without interest. This Class, accordingly, must vote to accept the Plan in order for the Plan to be confirmed. Class 11, the holder of Interest, is not impaired and will fund the Plan with a payment of $1,500.00 from his future exempt Social Security income in order to retain non-exempt assets which payment will be applied to the repayment of Administrative, Priority, Secured, and Unsecured Allowed Claims in consideration for his retention of non-exempt assets.

The Plan will be confirmed by the Bankruptcy Court and made binding upon all claimants if (a) with respect to impaired classes of claimants, the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims in each Class that actually vote for or against the Plan.

Even if an impaired Class does not accept the Plan, the Plan may nonetheless be confirmed under § 1129(b) of the Bankruptcy Code (commonly called the "cram down" provisions) if: (i) at least one impaired class has accepted the Plan, determined without including any acceptance of the Plan by any insider; and (ii) the Court determines that the Plan does not discriminate unfairly against, and is fair and equitable with respect to, the rejecting impaired class or classes. This determination will be made by the Court at the confirmation hearing in accordance with the standards set forth in § 1129(b) of the Bankruptcy Code.

A claimant who fails to vote to either accept or reject the Plan will not be included in the calculation regarding acceptance or rejection of the Plan. Moreover, if the Plan is approved by the Bankruptcy Court, whether or not the creditors have voted to accept it, those Claimants who have not voted on the Plan will be bound by, and their claims affected by, its terms and conditions.

This Statement, when approved by the Bankruptcy Court, will be in accordance with § 1125 of the Bankruptcy Code and is provided to each creditor whose claim has been scheduled by the debtors or who has filed a proof of claim against the debtors. This Statement is intended to assist creditors in evaluating the Plan and determining whether to accept the Plan. Under the Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Statement prior to or concurrently with such solicitation.

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied. Each creditor will receive the Bankruptcy Court's notice this Confirmation Hearing. A ballot to be completed by the holders of Claims will be included with the approved Disclosure Statement.

## VIII.   CONCLUSION.

The debtor believes that based on the financial information disclosed herein and the documents filed in the Bankruptcy Court that their proposed Plan of Reorganization affords creditors an opportunity to realize amounts in excess of that which would be realized upon the liquidation of the debtor's assets. The debtor urges each creditor to review the Plan, this Disclosure Statement, and the Statement of Affairs and Schedules on file with the Bankruptcy

Court, as well as the debtor's monthly reports of income and expenses which are also on file with the Bankruptcy Court, before coming to a decision as to the acceptability of this Plan. Should you have any questions after consulting with your own counsel or you may contact the offices of Marc R. Kivitz, Esquire, Suite 1330, 201 N. Charles Street, Baltimore, Maryland 21201; Telephone: (410) 625-2300; Facsimile: (410) 576-0140, attorney for the debtor.

Dated: September 29, 2016            Respectfully submitted:

                                    /s/  Bruce L. Pitt
                                    Bruce L. Pitt

/s/ Marc R. Kivitz
Marc R. Kivitz
Trial Bar No. 02878
Suite 1330
201 North Charles Street
Baltimore, Maryland 21201
Telephone: (410) 625-2300
Facsimile: (410) 576-0140
E: mkivitz@aol.com
Attorney for Bruce L. Pitt, debtor

Ds8 redline

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

IN RE:                                          *
                                                *
Bruce L. Pitt                                   *   Case No. 16-10659-WIL
                                                *   Chapter 11
              Debtor                            *
                                                *

*       *       *       *       *       *       *       *       *       *       *       *       *

**BALLOT FOR ACCEPTING OR REJECTING PLAN**

The Plan of Reorganization referred to in this Ballot can be confirmed by the United States Bankruptcy Court and thereby made binding on you if it is accepted by the holders of two-thirds (2/3) in amount, and more than one-half (1/2) in number of claims in each class, and the holders of two-thirds (2/3) in amount of equity security interests, in each class voting on the Plan.  In the event the requisite acceptances are not obtained, the Bankruptcy Court may nevertheless confirm the Plan if the Court finds that the Plan accords fair and equitable treatment to the class rejecting it.   TO HAVE YOUR VOTE COUNT, YOU MUST COMPLETE AND RETURN THIS BALLOT.  Return of this Ballot accepting or rejecting a Plan will be deemed to be the filing of a proof of claim only for the purposes of computing the vote.  This Ballot should be returned to:

**MARC R. KIVITZ, ESQUIRE
201 NORTH CHARLES STREET
SUITE 1330
BALTIMORE, MD 21201**

        The undersigned, a creditor of the above-named debtors in the unpaid principal amount of $_____,

        (Check One Box):     (   )  ACCEPTS

                             (   )  REJECTS

The Plan of Reorganization of the above-named Debtor filed on September 30, 2016, and as approved by the Bankruptcy Court for the submission to creditors for your vote.

DATE:_____
PRINT OR TYPE NAME:_____
SIGNED:_____
BY:_____
TITLE:_____
ADDRESS:_____
_____.

Exhibit A